**Wallace L. BRAUN and Mary T. Braun, Appellants,**

v.

**Henry YAFFEE, Appellee.**

No. 3286.

District of Columbia Court of Appeals.

Argued July 29, 1963.

Decided Sept. 24, 1963.

Leonard C. Collins, Washington, D. C., for appellants.

Herman Miller, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

This is an appeal from a judgment for appellee awarding $1,000 as damages for breach of a contract to sell real estate. The facts are as follows:

Appellants were taken to view appellee's property on May 29, 1962, by James West, a real estate salesman. They spent one-half hour inspecting the premises. That evening West went to appellants' home and typed an offer to purchase the property on a printed sales contract form. Appellants agreed to the terms, signed the offer, and gave West a $1,000 check as a deposit payable to the title company. Later that same evening West delivered the signed copies of the offer to appellee, who signed his name to the contract.

The next morning at approximately 7:45 a.m. Mrs. Braun tried to contact West. She was unsuccessful and left a message to have West call her. West called at noon and informed Mrs. Braun that "she was the owner of the house." Mrs. Braun told West that she could not use the house because it did not contain any laundry facilities, and that "she would have to get out of the contract." West thereafter contacted appellee who agreed to put in the laundry connections at no extra cost, but Mr. Braun, at 3:35 p.m. that afternoon, stopped payment on the deposit check.

On May 31 appellants, by special delivery mail, received a copy of the contract signed by appellee. The contract contained several changes from that originally signed by appellants in that the name of another realty company was added in two places as an additional broker, and the name

"James A. West" was signed on the line marked "Agent."[1] In all other respects the copies were identical.

Appellee instituted this action pursuant to a provision in the contract which provided that in the event of a breach by the purchaser, the seller had the option of recovering the deposit as damages. Appellants contend that delivery of the written acceptance was essential to constitute a binding contract and that they revoked their offer before such delivery took place. Appellants also contend that the changes in the contract constituted modification of the terms thereof and prevented the formation of a binding agreement.

The general rule as to revocation is stated in Restatement, Contracts § 41 (1932), as follows:

> "Revocation of an offer may be made by a communication from the offeror received by the offeree which states or implies that the offeror no longer intends to enter into the proposed contract, if the communication is received by the offeree before he has exercised his power of creating a contract by acceptance of the offer."

To the same effect is Restatement (Second), Law of Agency § 88 (1958):

> "To constitute ratification, the affirmance of a transaction must occur before the other party has manifested his withdrawal from it either to the purported principal or to the agent, and before the offer or agreement has otherwise terminated or been discharged."

■ Appellants contend, and we agree, that an attempted revocation took place when Mrs. Braun told West, as agent for appellee, that "she would have to get out of the contract." While appellee has contended that West was not acting as his agent, appellee's pretrial statement alleges that N. M. Crump and Capitol Hill Realty (the brokers with whom West was associated) were his agents. This was the theory pursued at trial, and hence appellee cannot challenge it for the first time on appeal. Consequently, the revocation was effective unless a binding agreement was concluded at some prior stage of the transaction.

Brill v. Mushinsky, 90 U.S.App.D.C. 132, 194 F.2d 158 (1952), presents a strikingly similar fact situation to the case at bar. In that case the seller employed a real estate broker to find a buyer for the seller's property. The broker produced a buyer who executed a contract offering $25,000 for the property and making a $1,000 deposit as part payment. After the contract was delivered to the seller, the seller wrote on the bottom, "I agree to accept $27,000," and thereunder signed his name. The contract was returned to the buyer who changed the purchase price from $25,000 to $27,000, and initialed the changes. When the broker took the document back to the seller, a dispute arose between them and the seller thereupon took the contract and tore off the bottom part which contained his signature. In considering this action, the court stated:

> "It seems to us that, when the vendor and the vendee both attached their signatures to the contract containing the price of $27,000, there was a completed contract."[2]

■ We find this language controlling of the case at bar and hold that when appellee signed the agreement there was a completed

---

1. The original offer provided: "Settlement is to be made at the office of * * * N. M. Crump * * * or at the Title Company * * *." This was changed by inserting "& Capitol Hill Realty" after "N. M. Crump." The original offer also provided: "The seller agrees to pay to * * * N. M. Crump * * * his agent, a commission amounting to 5% * * *." A similar change was made by inserting "& Capitol Hill Realty" after "N. M. Crump."

2. Brill v. Mushinsky, 90 U.S.App.D.C. 132, 133, 194 F.2d 158, 159 (1952). Compare Dane & Northrop v. Selzer, 63 So.2d 760 (La.App.1953).

contract. Consequently, the attempted revocation by Mrs. Braun over the telephone, like the tearing of the contract, was too late to be effective.

█ Brill is also dispositive of appellants' second contention. It was argued in Brill that since the instrument executed did not state who was to pay the broker's commission or at what rate it was to be paid, there was no valid contract. The provision relating to the broker's commission was identical with the one in the case at bar.[3] The court found that the seller was to pay the commission and that " * * *

an agreement between Mushinsky [seller] and his agent as to the amount of the commission was not a necessary element in the agreement between Mushinsky and Brill [buyer] for the sale of the property at $27,000." [4] Similarly, neither West's signature nor the addition of Capitol Hill Realty as broker in the two places previously noted affected the rights and liabilities of the Brauns under the contract. As such, these additions were not necessary elements in the agreement between the Brauns and appellee. The judgment is therefore

Affirmed.

3. See note 1, supra.

4. Brill v. Mushinsky, supra, note 2, 90 U.S.App.D.C. at 134, 194 F.2d at 159.